RUTH A. PUTNAM, Respondent, v. JOHN D. STOUT, JR., et al., as Executors of RICHARD STEIGLER, Deceased, et al., Appellants-Respondents and Third-Party Plaintiffs-Appellants. PHILIP BRAND CONSTRUCTION Co. et al., Third-Party Defendants-Respondents. (Action No. 1.) RUTH A. PUTNAM, Respondent, v. NORMAN WICKS, Appellant. (Action No. 3.) (And Another Title.) — In three consolidated negligence actions to recover damages for personal injuries, all brought by the same plaintiff, (1) defendants and third-party plaintiffs John D. Stout, Jr., and Hartford National Bank & Trust Co., as executors of the decedent's estate of Richard Steigler, and defendant the Grand Union Co., in Action No. 1, as limited by their briefs, appeal from so much of a judgment of the Supreme Court, Westchester County, entered March 23, 1973, as is against them and in favor of plaintiff upon a jury verdict of $125,000; each said appellant also appeals from the portion of the judgment which allocates their said liability as 25% for the Grand Union Co. and 75% for the executors-appellants, also upon the jury verdict; and the executors-appellants further appeal from the portion of the judgment which dismissed their third-party complaint against the third-party defendants in Action No. 1, upon the trial court's decision at the end of the entire case; and (2) defendant in Action No. 3, Norman Wicks, appeals, as limited by his brief, from so much of the judgment as is against him and in favor of plaintiff upon a jury verdict of $40,000. Judgment affirmed insofar as appealed from by appellants in Action No. 1, with one bill of costs to plaintiff jointly against (a) the executors-appellants and (b) appellant the Grand Union Co. and with one bill of costs jointly to the third-party defendants against the third-party plaintiffs. Judgment reversed insofar as appealed from by defendant Wicks, on the law, and, as between him and plaintiff, action severed and new trial granted on the issue of damages only, with costs to abide the event, unless, within 20 days after the entry of the order to be made hereon, plaintiff shall serve and file in the office of the clerk of the trial court a written stipulation consenting to reduce the verdict against said defendant to $20,000 and to the entry of an amended judgment accordingly, in which event the judgment, as so amended, is affirmed as to said defendant, without costs. We would not grant a new trial with respect to the questions of fact. The sole expert witness to testify, Dr. Tuby, stated that in his opinion, based upon hospital records, two spinal fusion operations upon plaintiff were causally related to an accident which had taken place some 16 months prior to the first such operation. That opinion lacked probative force, as it lacked a factual basis and was mere speculation (cf. *Quinones* v. *St. Vincent's Hosp. of City of N. Y.*, 20 A D 2d 529). The record indicates that the force of the collision in question was light, that plaintiff had long suffered from cervical degeneration in the area of the neck in question, that the specific condition necessitating the operations was not present after the collision, that the collision had not adversely affected the result of a cervical spinal fusion operation performed only three months prior thereto and that the operation was necessitated by her "cervical disc disease". Under the circumstances, it was error to permit the jury to consider those operations and subsequent hospitalizations with regard to the liability of defendant Wicks (see *Maucere* v. *Munson*, 6 A D 2d 892). Hopkins, Acting P. J., Brennan and Benjamin, JJ., concur; Cohalan and Munder, JJ., concur with the majority in their determinations upon the appeals by the executors-appellants and appellant

Wicks, but otherwise dissent and vote to reverse the judgment insofar as appealed from by defendant the Grand Union Co. (hereafter called G. U.) and to dismiss the complaint as against it, with the following memorandum: Plaintiff was injured when her left shoe was caught in a hole or depression in a driveway adjacent to a sidewalk which, in turn, adjoined premises leased to G. U. in a three-store shopping center in Tarrytown. Cartons and other items temporarily covered a portion of the walk, necessitating the use of the driveway to reach the parking lot at the rear of the stores. The lease to G. U. was executed in 1946. With respect to repairs, paragraph 3 thereof reads in pertinent part: "The Tenant covenants and agrees that it will make all necessary incidental repairs to the interior of the demised premises. All other necessary repairs the Landlord agrees to make including structural repairs, repairs to the exterior parts of the building, including the roof, sidewalks, skylights and window glass * * * . Should the Landlord neglect or refuse to make any such repairs * * * within a reasonable time after notice that the same are needed, the Tenant without liability or forfeiture of its terms hereby demised may have such repairs made at the expense of the Landlord and may deduct from the rent the cost thereof." Paragraph 22 of the same lease reads: "It is understood and agreed that this lease covers a store on the southerly side of the building now erected at 51 North Broadway, Tarrytown, New York, said store measuring approximately 60' on North Broadway, running to a depth of 65' and then to a width of 75' running to a depth of 60', being approximately 8400 square feet of floor space. This lease also covers all of the remaining area of the plot except the northerly store on North Broadway, now graded for parking lot and measuring approximately 23,000 square feet, which is reserved for the sole use of the tenant for parking purposes, including driveway thereto from North Broadway and roadway to lane in rear." The lease was renewed in 1964, with no change in conditions relative to repair. However, by a 1948 easement agreement, and continuing up to and beyond the date of plaintiff's accident on August 6, 1965, the use of the parking lot and driveway was expanded to include the customers and tenants of 39–45 North Broadway (F. W. Woolworth Co. and Genung's Incorporated). By a clause in the easement agreement the landlords of G. U. agreed to keep in repair and maintain "a free parking area, with rights of way * * * from and to the unnamed lane on the westerly side of said premises, for the use of owners and tenants, customers and visitors of the tenants and owners of the building at No. 39–45 Broadway, Tarrytown aforesaid, in common with the customers and visitors of such tenants as may from time to time occupy the existing building known as No. 51 North Broadway, Tarrytown." G. U. occupies 51 North Broadway. The crux of the problem as it concerns G. U. is that the trial court charged as a matter of law, with due exception taken, that G. U. "had some sort of a possessory interest of the parking lot and driveway" based on the wording in paragraph 22 of the lease. The portion of the premises on which plaintiff fell was obviously outside the building itself and as to repair fell within the purview of the landlord's obligation. As indicated above, the driveway itself and the adjacent sidewalk were open for use by customers not alone of G. U. but by those of Genung and Woolworth as well. G. U.'s "possessory interest" was somewhat analogous to that of a homeowner who owns the fee to the middle of a street running along his property, subject, however, to the rights of the public to use it in common with him and with no obligation upon him to make repairs. The question of notice was raised during the trial. That there was no actual notice of the condition complained of was freely conceded by all concerned. Rather, according to the trial court, responsibility hinged on

constructive notice, i.e., that the condition had existed for such a period of time that in the exercise of reasonable diligence the defendants should have known of the defective condition. In so stating we think the trial court erred. Constructive notice would apply to the landlords (Stout et al.) but not to the tenant. Unless G. U. itself broke up the driveway pavement, it could not be held liable. Nowhere in the record does it appear, and no witness has testified, that G. U. caused the depression into which Miss Putnam fell, or that any agent, servant or employee of G. U. was aware of the existence of the depression. Accordingly, the judgment should be reversed insofar as it is against G. U. and the complaint should be dismissed as against G. U. (see *Silva* v. *American Irving Sav. Bank,* 31 A D 2d 620, affd. 26 N Y 2d 727). There was no legal basis for holding G. U. liable as a tenant in the absence of proof that it caused the condition complained of to occur.